1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9                         ----oo0oo----

10   ERIC GRANT,                        NO. CIV. 08-00672 FCD KJM

11            Plaintiff,                MEMORANDUM AND ORDER

12        v.

13   KAMEHAMEHA SCHOOLS/BERNICE
     PAUAHI BISHOP ESTATE; J. DOUGLAS
14   ING, NAINOA THOMPSON, DIANE J.
     PLOTTS, ROBERT K.U. KIHUNE, and
15   CORBETT A.K. KALAMA, in their
     capacities as Trustees of the
16   Kamehameha Schools/Bernice Pauahi
     Bishop Estate; JOHN DOE; and JANE
17   DOE,

18            Defendants.
     _____/
19
     JOHN DOE and JANE DOE,
20
              Counter-Claimants,
21

22        v.

23   KAMEHAMEHA SCHOOLS/BERNICE
     PAUAHI BISHOP ESTATE; J. DOUGLAS
24   ING, NAINOA THOMPSON, DIANE J.
     PLOTTS, ROBERT K.U. KIHUNE, and
25   CORBETT A.K. KALAMA, in their
     capacities as Trustees of the
26   Kamehameha Schools/Bernice Pauahi
     Bishop Estate; and ERIC GRANT,
27
              Counter-Defendants
28   _____/

                            1

----oo0oo----

This matter is before the court on defendants/counter-defendants' Kamehameha Schools/Bernice Pauahi Bishop Estate, J. Douglas Ing, Nainoa Thompson, Diane J. Plotts, Robert K.U. Kihune, and Corbett A.K. Kalama (collectively, the "Estate defendants" or "Kamehameha") motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction, or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404. Defendants/counter-claimants John Doe and Jane Doe (the "Does") oppose the motions.  Plaintiff/counter-defendant Eric Grant ("Grant") also oppose the motions.  For the reasons set forth below,[1] the Estate defendants' motion to dismiss is DENIED and motion to transfer is GRANTED.

**BACKGROUND**

**A.   The Underlying Litigation**

The current litigation arises out of earlier litigation between John Doe and the Estate defendants.  In the underlying litigation, plaintiff John Doe, a student with no Hawaiian ancestry, applied for admission to Defendant Kamehameha Schools, a private, non-profit K-12 educational institution in Hawaii. Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 470 F.3d 827, 829 (9th Cir. 2006).  Doe was denied entry.  Id.  The Kamehameha Schools' admissions policy gave preference to students of Hawaiian ancestry, and Doe alleged that he was denied entry because of his race in violation of 42 U.S.C. § 1981.  Id.

---

[1]   Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. Local Rule 78-230(h).

1    Doe,[2] a Hawaiian resident, brought suit in the United States

2  District Court for the District of Hawaii against the Estate

3  defendants, also residents of Hawaii.  Id. at 834.  Doe retained

4  Grant, a California attorney, and John Goemans, a Hawaii

5  attorney, to represent him in the underlying litigation.  (Ex. 1

6  to Defs.' Request for Judicial Notice in Supp. of Mot. to Dismiss

7  ("RJN"), filed July 9, 2008.)  The Estate defendants also

8  retained counsel from both states.  In addition to two Hawaii law

9  firms, the Estate defendants were represented by Kathleen

10  Sullivan, then Dean of Stanford Law School, who resided in

11  California.  (Ex. 3 to RJN.)

12    In 2003, the parties filed cross-motions for summary

13  judgment.  The District Court granted summary judgment to the

14  Estate defendants, and dismissed the case.  Doe, 470 F.3d at 834.

15  On appeal, the majority of a three-judge panel reversed the

16  district court.  Id. at 835.  However, the Estate defendants

17  successfully petitioned for review en banc.  (Ex. 6 to RJN.)

18  Sitting en banc, the Ninth Circuit upheld the Estate defendants'

19  admittance policy and affirmed the District Court's judgment.

20  Doe, 470 F.3d 827.

21  **B.    The Settlement Agreement**

22    Following the Ninth Circuit's decision en banc, Doe

23  petitioned for certiorari in the United States Supreme Court.

24  (Decl. of Eric Grant in Opp'n to Defs.' Mot. to Dismiss ("Grant

25  Dismiss Decl."), filed Oct. 17, 2008, ¶ 9.)  While the petition

26

27    [2]    John Doe, a minor, brought suit through his mother and

28  next friend, Jane Doe.  Id. at 827.  Both John Doe and Jane Doe
   are plaintiffs in this action.

1    was pending before the Supreme Court, the two parties' California

2    counsel conducted settlement negotiations in California.  (Id. ¶

3    11.)  The parties' negotiations consummated in a written

4    settlement agreement, which was approved as to form in California

5    by the California counsel for the Estate defendants and the Does.

6    (Id. ¶ 13.)  The parties then signed the agreement; most of the

7    signatories executed the contract in Hawaii, although two

8    trustees signed the agreement in California.  (Defs.' Mem. Of

9    Points and Authorities in Supp. of Mot. to Dismiss ("Mot. to

10   Dismiss"), filed July 9, 2008, at 13-17; Decl. of Corbett A.K.

11   Kalama in Supp. of Mot. to Dismiss ("Kalama Decl."), filed July

12   9, 2008, ¶ 6; Decl. of Constance Lau in Supp. of Mot. to Dismiss

13   ("Lau Decl."), filed July 9, 2008, ¶ 6.)

14        The settlement agreement provided that the Does would

15   withdraw their petition for certiorari and dismiss all claims

16   against the Estate defendants in exchange for a substantial

17   monetary payment.  (John and Jane Doe's Cross-Claim ("Cross-

18   Claim"), filed Apr. 3, 2008, ¶ 7.) The agreement also provided

19   that no signatory or releasee, including counsel, would disclose

20   the Does' names or any term of the Settlement Agreement.  (Id.)

21   **C.   The Doe/Grant Litigation and Agreement**

22        Shortly after the parties signed the settlement agreement,

23   Grant and the Does got into a dispute over the amount of fees

24   owed to Grant.  Grant filed suit against the Does in district

25   court to recover his fees, and thereafter, the parties reached a

26   settlement agreement on the issue.  Grant v. Doe, Civ. No. 2:07-

27   CV-01087-GEB-EFB (E.D. Cal. 2007).  In addition to settling the

28   fee dispute, the agreement between Grant and the Does obligated

1   Grant to defend and indemnify the Does against liability up to

2   $100,000, and contained a forum selection clause, designating the

3   United States District Court for the Eastern District of

4   California as a proper forum.  (Cross-Claim at ¶ 7; Decl. of Eric

5   Grant in Opp'n to Mot. to Transfer ("Grant Transfer Decl."),

6   filed Oct. 20, 2008, ¶ 4.)

7   **D.    The Disclosure**

8        Days after settling with the Does, Grant sued Goemans in

9   state court, seeking declaratory judgment as to Goemans' interest

10  in the attorney's fees generated by the underlying litigation.

11  (Ex. 8 to Decl. of Paul Alston in Supp. of Mot. to Dismiss.

12  ("Alston Decl."), filed July 9, 2008.)  Approximately five months

13  after suing Goemans, Grant sought and obtained a protective order

14  barring Goemans from disclosing any of the confidential terms of

15  the settlement agreement between the Estate defendants and the

16  Does.  (Id. ¶ 24.)

17       However, Goemans subsequently spoke with representatives of

18  newspapers and television stations in Hawaii.  (Grant Compl.,

19  filed Mar. 28, 2008, ¶ 26.)  In those interviews, Goemans

20  disclosed what he claimed to be the amount of the settlement

21  between the Estate defendants and the Does.  (Id.)  Goemans'

22  disclosure caused great public controversy in Hawaii, and was

23  featured in television newscasts and in both of Hawaii's leading

24  newspapers.  (Id.)

25  **E.    This Litigation**

26       Following Goemans' disclosure of the purported settlement

27  amount, Grant brought this action against the Estate defendants

28  and the Does, seeking a declaration that he is not liable to

5

either party for damages arising out of the breach of the

confidential settlement agreement.   The Does subsequently brought

a cross-claim against the Estate defendants, seeking injunctive

and declaratory relief, and brought a counter-claim against

Grant, seeking indemnity and declaratory relief.   The Estate

defendants now move to dismiss for lack of subject matter

jurisdiction and personal jurisdiction, or, in the alternative,

to transfer venue pursuant to 28 U.S.C. § 1404.

**ANALYSIS**

**A.   Subject Matter Jurisdiction**

The Estate defendants assert that the complaint must be

dismissed because the court lacks subject matter jurisdiction.

Specifically, the Estate defendants argue that the Does must be

realigned as plaintiffs for jurisdictional purposes because Grant

and the Does share a common interest in the principal issue in

the litigation, and once realigned, there is not complete

diversity between the parties.

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure,

a party may by motion raise the defense that the court lacks

"jurisdiction over the subject matter" of a claim.   Fed. R. Civ.

P. 12(b)(1).   The plaintiff bears the burden of proof that

jurisdiction exists.   Stock West, Inc. v. Confederated Tribes,

873 F.2d 1221, 1225 (9th Cir. 1989); Thornhill Publishing Co. v.

General Telephone & Electronics Corp., 594 F.2d 730, 733 (9th

Cir. 1979).   If, as here, the defendant attacks "the existence of

subject matter jurisdiction in fact, quite apart from any

pleading," sometimes referred to as a "speaking motion," the

defendant can "rely on affidavits or any other evidence properly

before the court." <u>Mortensen v. First Fed. Sav. & Loan Ass'n,</u>

549 F.2d 884, 891 (3d Cir. 1977); <u>St. Clair v. City of Chico</u>, 880

F.2d 199, 201 (9th Cir. 1989). "It then becomes necessary for the

party opposing the motion to present affidavits or any other

evidence necessary to satisfy its burden of establishing that the

court, in fact, possesses subject matter jurisdiction." <u>Id.</u>

28 U.S.C. § 1332 "confers jurisdiction on federal courts

when each defendant is a citizen of a different state from each

plaintiff." <u>Dolch v. United Cal. Bank</u>, 702 F.2d 178, 181 (9th

Cir. 1983) (citations omitted).  "The courts, not the parties,

are responsible for aligning the parties according to their

interests in the litigation.  If the interests of a party named

as a defendant coincide with those of the plaintiff in relation

to the purpose of the lawsuit, the named defendant must be

realigned as a plaintiff for jurisdictional purposes." <u>Dolch</u>,

702 F.2d at 181 (citations omitted) (realigning party and

dismissing for lack of jurisdiction).

The court is not required to realign parties based on any

overlapping interest; rather, the court "must align for

jurisdictional purposes [only] those parties whose interests

coincide respecting the 'primary matter in dispute.'" <u>Prudential</u>

<u>Real Estate Affiliates, Inc. v. PPR Realty, Inc.</u>, 204 F.3d 867,

873 (9th Cir. 2000) (quoting <u>Continental Airlines, Inc. v.</u>

<u>Goodyear Tire & Rubber Co.</u>, 819 F.2d 1519, 1523 (9th Cir. 1987)).

When determining the primary dispute of a case, the court focuses

on the plaintiff's principal purpose for filing suit. <u>Dolch</u>, 702

F.2d at 181.  "The determination of the 'primary and controlling

matter in dispute' does not include the cross-claims and

1    counterclaims filed by the defendants." <u>Zurn Indus., Inc. v.</u>

2    <u>Acton Constr. Co.</u>, 847 F.2d 234, 237-38 (5th Cir.1988).

3        In this case, on the face of the complaint, the court has

4    subject matter jurisdiction based upon the complete diversity

5    between the California plaintiff, Grant, and the Hawaii

6    defendants, the Estate defendants and the Does.  However, the

7    Estate defendants contend that the Does are improperly aligned as

8    defendants and should be realigned as plaintiffs, thus defeating

9    complete diversity of citizenship between plaintiffs and

10   defendants.

11       The primary and controlling matter in this dispute for

12   purposes of realignment is whether Grant is liable to either the

13   Estate defendants or the Does for damages arising out of Goeman's

14   disclosure to the press and the resulting litigation.  It is

15   likely that Grant and the Does may have similar interests in

16   seeking to establish that the Estate defendants cannot hold them

17   liable for Goeman's disclosures.  However, it is not necessary to

18   Grant's claim for declaratory relief that the Does be absolved of

19   liability to the Estate defendants.  In fact, Grant contends

20   that, unlike the Does, he was not a party to the settlement

21   agreement in the underlying litigation and thus, cannot be held

22   liable for any breach of that agreement.  (<u>See</u> Pl.'s Mot. for

23   Summ. J., filed Oct. 3, 2008, at 7-8.)  As such, Grant does not

24   have an identical interest to the Does in proving that no

25   liability arises under the contract.  Furthermore, even if both

26   Grant and the Does are absolved of any liability for Goeman's

27   disclosure, there would remain a controversy with respect to

28   Grant's liability for damages, including the cost of this

litigation, to the Does pursuant to the contract between them.
Therefore, while Grant and the Does may have similar interests
with respect to one major issue in the litigation, specifically
whether they are liable under the settlement agreement for
Goemans' disclosures, their interests do not coincide with
respect to the primary issue set forth in Grant's complaint,
whether he is liable for any damages.  See Prudential, 204 F.3d
at 873-74 (declining to realign the parties because ultimate
resolution of the claim would create antagonistic interests
between the parties, even though the parties had a similar
interest in maintaining injunctive relief and had acted in
conjunction at all previous current stages of the litigation).

     The cases relied upon by the Estate defendants in support of
their argument for realignment are distinguishable.  In Dolch v.
United Cal. Bank, 702 F.2d 178.  In Dolch, the plaintiff, the
decedent's daughter, brought suit in federal court against the
bank, which had been assigned the rights to the trust at issue,
and her sister.  Id. at 179.  The plaintiff claimed that she and
her two surviving siblings, including her defendant sister, were
each owners of an undivided one-third interest in the trust.  Id.
In answering the complaint, the defendant sister admitted all of
the plaintiff's allegations.  Id. at 181.  The court also noted
that the defendant sister was the "driving force" behind the
action.  Id.  The Dolch court held that the siblings were
properly realigned as plaintiffs because they had identical
interests and would equally benefit from a decision against the
bank.  Id. at 181-82.  Conversely, unlike in Dolch, Grant does
not have an identical interest to the Does in its suit against

1  the Estate defendants; rather, it is likely that he will proceed

2  against different theories in his claim for declaratory relief.

3  Further, Grant and the Does will not benefit equally from a

4  decision against the Estate defendants; rather, they will

5  continue to have claims against each other for the costs

6  associated with this litigation.  Finally, there is no evidence

7  of the type of collusion the court noted in existed in <u>Dolch</u>.  As

8  such, the Estate defendants reliance on <u>Dolch</u> is unpersuasive.

9       Similarly, the facts of <u>Continental Airlines, Inc. v.</u>

10 <u>Goodyear Tire & Rubber Co.</u>, 819 F.2d 1519, are readily

11 distinguishable from the facts of this litigation.   In

12 <u>Continental Airlines</u>, Continental brought suit in state court

13 against McDonnell Douglas Corporation (MDC) and Sargent

14 Industries following a deadly airplane accident.  <u>Id.</u> at 1521-22.

15 MDC attempted to remove the litigation to federal court, but the

16 action was remanded for lack of diversity.  <u>Id.</u>  Subsequently,

17 MDC filed a nearly identical federal declaratory judgment action,

18 naming Continental and Sargent as defendants.  <u>Id.</u>  The

19 <u>Continental</u> court realigned Sargent as a plaintiff with MDC,

20 holding that both parties had an *identical* interest in proving

21 the validity and scope of an exculpatory clause.  <u>Id.</u> at 1523

22 (emphasis added).  In support of its holding, the court noted

23 that one supposedly adverse party submitted briefs in support of

24 the other's summary judgment motion and the two parties were

25 represented by the same counsel on appeal.  <u>Id.</u>  In this case, as

26 set forth above, Grant and the Does do not have identical

27 interests in their issues with the Estate defendants.  Moreover,

28 there is not the same type of collusive activity and blatant

attempt to forum shop as before the court in <u>Continental</u>.  As such, the court's holding in <u>Continental</u> does not support realignment of the parties in this case.

Accordingly, because Grant and the Does' interests do not sufficiently coincide to justify realignment, the Estate defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

**B.  Personal Jurisdiction**

The Estate defendants assert that the complaint must be dismissed because the court lacks personal jurisdiction.  "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies."  <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11 F.3d 1482, 1484 (9th Cir. 1993) (citation omitted).  "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution."  <u>Id.</u> at 1484 (citation omitted).  Thus, only constitutional principles constrain the jurisdiction of a federal court in California.  <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990).  "Due process requires that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of suit does not offend traditional notions of fair play and substantial justice."  <u>Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1129 (9th Cir. 2003) (internal quotations omitted); <u>see</u> <u>Burger King v. Rudzewciz</u>, 471 U.S. 462, 476 (1985).

Once a defendant challenges jurisdiction, the burden of proof to show that jurisdiction is appropriate lies with the plaintiff.  <u>Sher</u>, 911 F.2d at 1361.  When a defendant's motion to dismiss is to be decided on the pleadings, affidavits, and discovery materials, the plaintiff need only make a prima facie showing that personal jurisdiction exists in order for the action to proceed.  <u>Id.</u>

A court may exercise either general or specific jurisdiction over a non-resident defendant.  "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414-416 (1984)).  The Does and Grant do not contend that the court has personal jurisdiction over the Estate defendants based upon general jurisdiction.  (<u>See</u> Pl. Grant's Opp'n to Mot. to Dismiss ("Grant Opp'n"), filed Oct. 17, 2008, at 9; Does' Opp'n to Mot. to Dismiss ("Doe Opp'n"), filed Oct. 17, 2008, at 12.)

Where general jurisdiction does not exist, the court may still determine whether the defendant has had sufficient minimum contacts with the state, as it relates to the pending litigation against it, in order to justify the exercise of specific jurisdiction.  <u>See</u> <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267, 270 (9th Cir. 1995).  In determining whether a district court can exercise specific jurisdiction over a defendant, the Ninth Circuit has articulated the following three-part test:

/////

1    (1) the nonresident defendant must purposefully direct
       [its] activities or consummate some transaction
2       with the forum or resident thereof; or perform
       some act by which [it] purposefully avails
3       [itself] of the privilege of conducting activities
       in the forum, thereby invoking the benefits and
4       protections of its laws;

5    (2) the claim must be one which arises out of or
       relates to the defendant's forum-related
6       activities; and

7    (3) the exercise of jurisdiction must comport with
       fair play and substantial justice, i.e. it must be
8       reasonable.

9 Core-Vent, 11 F.3d at 1485 (citation omitted).

10   **1. Purposeful Availment**

11    The purposeful availment prong requires a "qualitative

12 evaluation of the defendant's contact with the forum state in

13 order to determine whether the defendant's conduct and connection

14 with the forum state are such that he should reasonably

15 anticipate being haled into court there." Harris, 328 F.3d at

16 1130 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S.

17 286, 297 (1980); Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.

18 1987)) (internal quotations omitted).  "The purposeful availment

19 requirement is met if the defendant 'performed some type of

20 affirmative conduct which allows or promotes the transaction of

21 business within the forum state.'" Id. (quoting Sher, 911 F.2d

22 at 1362).  However, a defendant may not be haled into a

23 jurisdiction based upon the unilateral acts of third parties.

24 Lake, 817 F.2d at 1421 (citing Burger King, 471 U.S. at 475).

25    In a case arising out of a contractual relationship, "the

26 mere existence of a contract with a party in the forum state does

27 not constitute sufficient minimum contacts for jurisdiction."

28 Sher, 911 F.2d at 1362.  Rather, the court "must look to 'prior

negotiations and contemplated future consequences, along with the

terms of the contract and the parties' actual course of dealing'

to determine if the defendant's contacts are '*substantial*' and

not merely 'random, fortuitous, or attenuated.'"   Id. (quoting

Burger King, 471 U.S. at 478-80) (emphasis in original).

In this case, the Estate defendants sought representation in

the underlying litigation from California counsel, Kathleen

Sullivan.   Sullivan worked from California in her representation

of the Estate defendants before the district court in Hawaii,

before the initial 3-judge panel of the Ninth Circuit in San

Francisco, California, and before the 15-judge en banc Ninth

Circuit panel in San Francisco, California.   (Grant Dismiss Decl.

¶ 8.)   On May 8, 2007, Sullivan, acting on behalf of the Estate

defendants, and Grant conducted settlement negotiations in person

in Pleasanton, California.   (Grant Dismiss Decl. ¶ 11.)   Over the

next three days, Sullivan and Grant also conducted negotiations

via telephone and e-mail from their respective offices in

California.   (Grant Dismiss Decl. ¶ 12.)   On May 11, 2007, the

negotiations consummated in a written settlement agreement that

Sullivan and Grant approved as to form in California.   (Grant

Dismiss Decl. ¶ 13.)   Two of the trustees of Kamehameha signed

the agreement in California.   (Kalama Decl. ¶ 6; Lau Decl. ¶ 6.)

Under these facts, the court finds that extensive negotiations

leading up to the execution of the contract at issue in the

parties' claims against the Estate defendants took place in

California and that the contract was executed, in part, in

California.   Moreover, the settlement agreement provided that no

signatory or releasee, including counsel, would disclose the

14

Does' names or any term of the Settlement Agreement.[3]   (Cross-Claim ¶ 7.)   As such, the contract may have imposed continuing obligations on California residents, namely the parties' California counsel, to abide by the confidentiality provisions.[4]

Because the Estate defendants conducted extensive settlement negotiations in California through their designated California representative, because the agreement was executed, in part, in California, and because the agreement imposed continuing obligations on California residents, the court finds that the Estate defendants conducted sufficiently substantial activities in California to satisfy the purposeful availment prong.   See Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697-98 (8th Cir. 1995) (holding that a defendant's contacts with the forum states were substantial where the litigation arose out of the alleged breach of a settlement agreement that was partially negotiated in the forum state, executed in the forum state, and demanded on-going duties from a resident of the forum state); see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977) (holding that "[b]y participating in the contract negotiations in California, [the defendant] purposely availed itself of the privilege of carrying out activities in that state); cf.

_____

[3] The court also notes that the alleged essence of the agreement, the exchange of monetary compensation in return for the Does' dismissal of their pending petition for certiorari, required partial performance in California.   The money paid by the Estate defendants to Grant's client trust account at his bank in Sacramento, California.   (Grant Decl. ¶ 15.)

[4] The court notes that it is not making any finding with respect to the merits of the litigation.

Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008) (holding that the defendant's contract with the plaintiff for a one time sale of a good did not amount to purposeful availment where the contract did not impose any ongoing obligations with the plaintiff).

### 2. Arising Under

In order to satisfy the second prong of the three-part test, Grant must establish that the contacts giving rise to purposeful direction are those that give rise to the current dispute. Bancroft, 223 F.3d at 1088. The Ninth Circuit relies "on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995) (citation omitted). The Estate defendants' contacts in California – namely its representation by a California attorney who negotiated a settlement agreement in California that may have imposed future obligations on California residents – resulted in the contract and confidentiality agreement which are at the center of the litigation. Therefore, the current action arises out of the Estate defendants' contacts with California.

### 3. Reasonableness

Once the first two prongs of the minimum contacts test are established, a defendant may defeat jurisdiction only by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Core-Vent, 11 F.3d at 1487; Amini Innovation Corp., 497 F. Supp. 2d at 1108. Specifically, a defendant must show that the exercise of

jurisdiction in the forum would "make litigation so gravely

difficult and inconvenient that a party unfairly is at a severe

disadvantage in comparison to his opponent."  Burger King, 471

U.S. at 478 (internal quotations and citations omitted).  In

determining whether the exercise of specific jurisdiction is

reasonable, the court must weigh the following seven factors:

> (1)  the extent of the defendant['s] purposeful interjection into the forum state's affairs;
> (2)  the burden on the defendant of defending in the forum;
> (3)  the extent of conflict with the sovereignty of the defendant['s] state;
> (4)  the forum state's interest in adjudicating the dispute;
> (5)  the most efficient [forum for] judicial resolution of the controversy;
> (6)  the importance of the forum to the plaintiff's interest in convenient and effective relief; and,
> (7)  the existence of an alternative forum.

Core-Vent, 11 F.3d at 1487-88 (citation omitted).[5]

While, as set forth above, the court concludes that the

Estate defendants purposefully directed their activities to

California, the extent of the interjection has not been great.

Rather, all of their contacts arise out of both their own and the

Does' representation by California counsel in litigation that was

initiated in Hawaii by Hawaiian parties.  This factor thus weighs

in favor of the Estate defendants.

The Estate defendants assert that they would suffer

substantial burdens if required to litigate this case in

California because all of Kamehameha's employees, witnesses, and

representatives are located in Hawaii.  The Ninth Circuit has

recognized that "[m]odern means of communication and

---

[5]    Neither of the parties raise any argument with regard to sovereignty of the defendants' state.

1   transportation have tended to diminish the burden of defense of a

2   lawsuit in a distant forum."  Ins. Co. of N. Am. v. Marina Salina

3   Cruz, 649 F.2d 1266, 1271 (9th Cir. 1981); see also Menken v.

4   Emm, 503 F.3d 1050, 1060 (9th Cir. 2007) ("[W]ith the advances in

5   transportation and telecommunications and the increasing

6   interstate practice of law, any burden is substantially less than

7   in days past."); Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d

8   126, 128-29 (9th Cir. 1995) (noting that unless the

9   "inconvenience is so great as to constitute a deprivation of due

10  process, it will not overcome clear justifications for the

11  exercise of jurisdiction.") (citation omitted).  "[S]ome

12  additional inconvenience is inevitable" in almost any case where

13  the defendant does not reside in the forum state.  Indiana

14  Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F. Supp.

15  743, 748 (C.D. Cal. 1995).  In light of the resources available

16  to the Estate defendants, this factor weighs in favor of

17  reasonableness, or, at best, is neutral.

18      Both California and Hawaii have an interest in the

19  litigation.  California has an interest in providing a forum for

20  adjudicating the dispute of one of its residents.  Hawaii has an

21  interest in this litigation because the underlying litigation

22  which gave rise to the settlement agreement was between Hawaiian

23  parties and concerned schools and children in Hawaii.  Moreover,

24  the effect of the disclosure of the terms of that agreement was

25  felt in Hawaii.  Because both states can claim an interest in

26  this litigation, this factor is neutral.

27      All parties agree that Hawaii is an alternative forum for

28  this dispute.  Based upon the submissions of the parties, the

court finds that Hawaii would be the most efficient forum for resolution of the claims.  The majority of witnesses are located in Hawaii, including Kamehameha trustees, attorneys, and employees, the reporters in Hawaii to whom disclosures were made, and the Does.  Further, the agreement at issue settles a lawsuit between Hawaii residents filed in a Hawaii court, which included a settlement payment by the Hawaii defendants to Hawaii plaintiffs.  Grant chose to represent these non-resident defendants in the underlying action and filed the complaint in Hawaii.  The court finds it troubling that Grant now contends that appearance in a Hawaii court arising out of the settlement agreement in that litigation would be inconvenient and unduly burdensome.  This assertion is particularly troubling in light of the his current representation of another plaintiff in a case against Kamehameha in Hawaii.  (Defs' Reply in Supp. of Mot. to Dismiss, filed Oct. 24, 2008, at 12.)  Therefore, these factors weigh in favor of the Estate defendants.

Looking at the arguments and submissions of the party as a whole, the court finds that Hawaii would be a more reasonable forum for this litigation.  However, in light of the presumption of reasonableness created by their conduct directed at California, it is not enough that the Estate defendants demonstrate that another forum is more reasonable than California.  See Sher, 911 F.2d at 1365.  Rather, defendants must show that the exercise of jurisdiction in this forum gives rise to a "severe disadvantage" that amounts to a due process violation.  Id.  The Estate defendants have not met this burden.  While the Estate defendants have demonstrated significant

inconvenience and a less efficient forum, they have not supported a finding that litigation in this forum would place them at a "severe disadvantage."

Therefore, because Grant has demonstrated that the Estate defendants had sufficient minimum contacts with California giving rise to this cause of action and because the Estate defendants have failed to demonstrate that the exercise of jurisdiction would be so unreasonable as to violate due process, the Estate defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

**C.  Transfer**

Alternatively, the Estate defendants move to transfer venue of this action to Hawaii pursuant to 28 U.S.C. § 1404(a). Pursuant to § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  A court has broad discretion in deciding whether or not to transfer venue pursuant to 28 U.S.C. § 1404(a). E. & J. Gallo Winery v. F. & P. S.P.A., 899 F. Supp. 465, 466 (E.D. Cal. 1994).  A defendant moving to transfer venue under § 1404(a) must therefore satisfy both of the following requirements: (1) the transferee district is one in which the action might have been brought originally;[6] and (2) transfer will enhance the convenience of the parties and

---

[6]     The Estate defendants assert that this litigation could have been brought in the United States District Court for the District of Hawaii.  Neither the Does nor Grant dispute this assertion.  Rather, in opposition to the Estate defendants' motion to dismiss, the Does and Grant concede that Hawaii is an alternative forum.

witnesses, and is in the interests of justice.  <u>See</u> <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964).  In considering the second requirement, the court employs a case by case analysis, which may include evaluation of the following factors:  (1) the convenience of the witnesses and the availability of compulsory process to compel attendance of unwilling non-party witnesses; (2) ease of access to sources of proof; (3) the location where the relevant agreements were negotiated and executed; (4) the contacts relating to the plaintiff's cause of action in the chosen forum; (5) the respective parties' contacts with the forum;(6) the state that is most familiar with the governing law; and (7) the plaintiff's choice of forum and the presence of a forum selection clause; and (8) the differences in costs in litigation in the two forums.[7]  <u>See</u> <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498-99 (9th Cir. 2000).  Courts should also consider the relevant public policy of the forum state.  <u>Id.</u> at 499.

The moving party has the burden of establishing that an action should be transferred.  <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979).  Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.  <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947).

Considering the Estate defendants' showing in light of the factors described in <u>Jones</u>, the court finds that under the facts

_____

[7]    The Estate defendants do not raise this issue in their motion.  While the Does attempt to assert that Grant will suffer a substantial burden if required to litigate this case in Hawaii, Grant does not make this argument on his own behalf.  Further, as set forth infra, Grant's voluntary participation in both past and current litigation in Hawaii renders this argument unpersuasive.

of this case, transfer is warranted.  All parties in this action,

with the exception of Grant, are residents of Hawaii.  All of the

parties to the underlying action, the primary parties to the

settlement agreement at issue, are residents of Hawaii.  These

witnesses' testimony may be relevant to the interpretation of the

confidentiality provision and its importance to the respective

parties.  Kamehameha's employees are all citizens of Hawaii.

These witnesses' testimony may also be relevant to the importance

of the confidentiality agreement and the effect of the

disclosure.  The reporters to whom Goemans disclosed information

about the settlement are located in Hawaii.  These witnesses may

have information relevant to the full extent of Goemans'

disclosures or to the effect of such disclosure in the community.

The two participants in the conversation that gave rise to the

declaratory relief action, Schulmeister and Kuniyuki, are

citizens of Hawaii.  Their testimony may be relevant to the

existence of a controversy between the parties in the current

action.[8]

     Grant and the Does assert that the most important witnesses

to this case reside in California.  Goemans, the Does' former

counsel, is currently in Los Angeles.  (Decl. of Paul Alston in

_____

     [8]     Grant contends that the court should disregard the
Estate defendants' list of potential witnesses because they did
not provide them in the form of affidavits or declarations.  See
Cochran v. NYP Holdings, Inc., 58 F. Supp. 2d, 1113, 1119 (C.D.
Cal. 1998).  The court declines to do so.  Unlike the case relied
upon by Grant, the Estate defendants have not merely broadly
asserted that the most relevant witnesses are located outside the
district, but rather, they have identified their witnesses and
set forth a description of the testimony it is anticipated they
will provide.  See Saleh v. Tital Corp., 361 F. Supp. 2d 1152,
1162-63 (S.D. Cal. 2005).

1   Supp. of Mot. to Transfer, filed Oct. 24, 2008, ¶ 4.)   The Does

2   and Grant also assert that California lawyers who currently

3   represent the parties may need to testify.   However, there is no

4   evidence that these same attorneys would not continue to

5   represent the parties if the action was transferred to Hawaii.

6   As such, there would appear to be little inconvenience in calling

7   them to testify.   Moreover, the court also notes that only one of

8   the referenced attorneys, James Banks, is located in the Eastern

9   District of California.

10        Therefore, the court finds that the majority of the

11   potential witnesses are located in Hawaii.   For the most part,

12   the remaining witnesses are attorneys who voluntarily chose to

13   represent Hawaiian residents in either the underlying or current

14   litigation.   As such, the court finds that the convenience of the

15   majority of witnesses,[9] the availability of compulsory process to

16   compel attendance of unwilling non-party witnesses, and the ease

17   of access to proof[10] weigh heavily in favor of transfer to

18   Hawaii.

19        While the settlement agreement that is at the core of this

20   litigation was negotiated in California, it was executed by

---

[9]     Grant contends that his filing of a summary judgment
motion relevant to this inquiry because if successful, the
litigation will be resolved without any witnesses.   This
contention, without support to any case law, is meritless.   The
court will not assess the merits of Grant's motion for summary
judgment, to which defendants have not had an opportunity to
respond, in assessing the pending motion to transfer venue.

[10]     The court primarily considers the availability and ease
of access to witnesses under this factor as the Estate defendants
have not demonstrated with any specificity how transfer aids in
the ease of access to documentary evidence.

almost all parties in Hawaii.  Further, the settlement agreement
resolved litigation filed by Hawaii plaintiffs against Hawaii
defendants in the Hawaii district court, challenging policies
that pertain to Hawaii schools and primarily affect Hawaiian
children.  The court notes that many of the contacts with
California which gave rise to personal jurisdiction, including
the in-person negotiations between Grant and Sullivan and the
execution of the settlement agreement by two of the trustees,
took place outside the Eastern District of California.  Moreover,
as set forth above, while these contacts were sufficiently
substantial to satisfy the purposeful availment prong of personal
jurisdiction, the extent of the Estate defendants' contacts in
California generally, and in this district specifically, are not
great.

Further, this litigation all arises out of Grant's voluntary
representation of Hawaiian plaintiffs in an action filed in
Hawaii.  It strains credulity for Grant to now assert that his
contacts with and this action's relationship to Hawaii is
minimal.  This premise is further strained by his current
representation of Hawaiian plaintiffs in a similar action against
similar defendants in Hawaii.  See Jacob Doe v. Kamehameha
Schools/Bernice Pauahi Bishop Estate, Civ. No. 08-00359 JSM-BMK
(D. Haw. 2008).[11]

Under the circumstances of this case, the location where the
relevant agreements were negotiated and executed, the contacts

_____

[11]   The court takes judicial notice that a complaint was
filed in this case on August 6, 2008, listing Grant as counsel
for plaintiffs.  The docket reveals that Grant remains counsel
for plaintiffs, pro hac vice.

1  relating to the plaintiff's cause of action in the chosen forum,

2  and the respective parties' contacts with the forum weigh heavily

3  in favor of transfer to Hawaii.

4       While the court does not reach any conclusions with respect

5  to the choice of law to be applied in this action, it notes that

6  it is very likely that Hawaii law will be at the center of the

7  dispute between the Estate Defendants, Grant, and the Does.  Both

8  the Estate defendants and the Does agree that Hawaii state law

9  governs the settlement agreement in the underlying litigation.

10 Further, because the gravamen of the settlement agreement, which

11 was executed for the most part in Hawaii, was the exchange of

12 money by Hawaii defendants to Hawaii plaintiffs in return for the

13 dismissal of the petition for certiorari arising out of a claim

14 initially filed in Hawaii, it is very likely that Hawaii state

15 law applies to the dispute arising out of the settlement

16 agreement.  See Cal. Civ. Code § 1646.  As such this factor

17 weighs in favor of transfer to Hawaii.

18      Grant and the Does argue that this dispute also involves the

19 settlement agreement reached between them with respect to the

20 apportionment of attorneys' fees and potential indemnification

21 for the costs of suit and damages.  This agreement contains both

22 a forum selection clause, designating this court as a proper

23 forum, and a choice of law provision, designating California law

24 as the applicable law.  (Grant Transfer Decl. ¶ 4.)  However, the

25 Estate defendants were not a party to this agreement.  Moreover,

26 this agreement is derivative of Grant's representation of the

27 Does in the underlying litigation.  While the court makes no

28 determinations with respect to the merits of the dispute, it is

highly likely that the applicability of the indemnity provisions in the Doe/Grant agreement is contingent upon or at least seriously affected by the resolution of the claims against the Estate defendants.  As such, it is the settlement agreement in the underlying action which is at the core of this litigation for purposes of the court's determination regarding transfer. Finally, the court notes that nothing prevents Grant or the Does from seeking to sever these claims from the original action in order to give effect to the forum selection and choice of law provisions in the contract between them.

Finally, public policy weighs in favor of transfer of this litigation to Hawaii.  While California has an interest in providing a forum for adjudicating the dispute of one of its residents, Hawaii has an interest in this litigation because the underlying litigation which gave rise to the settlement agreement was between Hawaiian parties and concerned schools and children in Hawaii.  Hawaii has a substantial public policy interest in (1) enforcing settlement agreements between Hawaii residents; and (2) regulating the conduct of out-of-state attorneys who choose to represent Hawaii residents in Hawaii litigation.  Under the circumstances in this case, the court finds that Hawaii's interest in this litigation outweighs California's interest.

The court notes that a plaintiff's choice of forum in which he resides is accorded substantial weight.  Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)); see also Ellis v. Costco Wholesale Corp., 372 F. Supp. 2d 530, 537-38 (N.D. Cal. 2005).  However, based upon the submissions of the

parties and in light of all the circumstances, the Estate defendants have demonstrated that the balance of factors weighs heavily in favor of transfer.  As such, the Estate defendants' motion to transfer venue is GRANTED.[12]

**CONCLUSION**

Therefore, for the foregoing reasons, the Estate defendants' motion to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction is DENIED.[13]  The Estate defendants' motion to transfer this case to the United States District Court for the District of Hawaii pursuant to 28 U.S.C. § 1404(a) is GRANTED.[14]

IT IS SO ORDERED.

DATED: November 17, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[12]    Because the court grants the Estate defendants' motion to transfer, it does not reach the argument raised in their reply that venue is not proper.

[13]    Because the court finds that transfer is appropriate pursuant to § 1404(a), the court does not reach the merits of the Estate defendants' motion for the court to exercise its discretion to decline to entertain Grant's declaratory relief claim.

[14]    In light of the court's order, plaintiff Grant's pending motion for summary judgment is DENIED as MOOT.